```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION AT LEXINGTON

BYRON KEITH SMITH,              |
                                |
    Plaintiff,                  |   Civil Action No. 10-00008-JMH
                                |
v.                              |
                                |
FRED LIEF, ET AL.,              |        MEMORANDUM OPINION
                                |            AND ORDER
    Defendants.                 |
```

***** ***** ***** *****

Plaintiff Byron Keith Smith is confined in the Federal Correctional Institution located in Ashland, Kentucky ("FCI-Ashland").[1] Smith has filed a *pro se* civil rights complaint pursuant to 28 U.S.C. §1331, under the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971). He has named eleven defendants, all of whom are identified as having been employees of FMC-Lexington.[2] R. 2

This matter is before the Court for initial screening. Because this is a civil action that is being pursued by a prisoner

---

[1] Although Smith is now confined in FCI-Ashland, the events about which he complains transpired between December of 2008 and March of 2009, when he was confined in the Federal Medical Center located in Lexington, Kentucky ("FMC-Lexington").

[2] The named defendants are: (1) Fred Lief, Physical Therapist; (2) Stephen Dewalt, former Warden; (3) Pamela Baker, Nurse; (4) Mary Anderson, Special Investigative Agent ("SIA"); (5) Jack Quinn, Lieutenant of the Special Investigative Services ("SIS"); (6) B.J. Johnson, Captain; (7) Kim Williams, Assistant Warden of Programs; (8) Jason Terris, Assistant Medical Warden; (9) Ginger Jones, Assistant Hospital Administrator; (10) Alex Brenner, Chief Physical Therapist; and (11) Winston Landsen, Lieutenant.

against government officers, the Court must screen the Complaint under 28 U.S.C. § 1915A. Additionally, the Court must also screen the Complaint under 28 U.S.C. § 1915(e) since Smith is proceeding *in forma pauperis*.[3] Both of these sections require the Court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *Id*. §§ 1915(e) & 1915A.

*Pro se* complaints are held to less stringent standards than those drafted by attorneys. *See Wagenknect v. United States*, 533 F.3d 412, 415 (6th Cir. 2008). Moreover, at the screening phase, the allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

Smith alleges that FMC-Lexington staff violated prison policies by directing him to perform physical therapy procedures on other inmates and staff members. Smith claims that he refused to render physical therapy treatments to a partially nude, female, FMC-Lexington staff member. Smith wrote a letter to a friend in which he indicated that he would file a grievance exposing alleged various improprieties at the prison. He claims that defendants retaliated against him by removing him from his prison job;

---

[3] By separate Order, this Court has granted Smith's motion to proceed *in forma pauperis*.

confining him in the Segregated Housing Unit ("SHU") for approximately six months; denying him access to various prison programs and privileges; and transferring him to FCI-Ashland, which he claims is a greater distance from his family.[4]

Smith seeks compensatory and punitive damages against the defendants in their individual and official capacities. He also seeks the appointment of counsel. R. 3. For the reasons set forth below, the Court will deny Smith's motion for appointment of counsel and dismiss this action with prejudice for failure to state a claim upon which relief can be granted.

### ALLEGATIONS OF THE COMPLAINT

The following is a summary of Smith's allegations. While confined at FMC-Lexington, Smith held a prison job working in the Physical Therapy Department. Between December of 2008 and February of 2009, Defendant Fred Lief ordered and directed Smith, "by coercion" to render physical therapy treatments to staff members and other inmates, in violation of prison policies. Smith became particularly concerned and uncomfortable when Lief ordered and directed him to perform a heat ultrasound procedure on Staff Member

---

[4] Smith's complaints about being transferred, and the resulting increased travel distance to his family, are not entirely clear. He does not state where his family lives. In his BP-10 appeal, he stated: "My family cannot travel that distance and [sic] not able to visit me." R. 2-4, p. 4. In his BP-11 appeal, Smith stated: "I was told that I was going to be transferred which is also another form of punishment due to fact that this is the closest Low Facility to my home." *Id.*, p.6.

Pamela Baker when she was partially nude and/or was covered only with a sheet. Smith verbally objected to Lief, who threatened him with disciplinary action, confinement in SHU, loss of his good time credits ("GTC"), and transfer to a higher security facility if he refused to comply with the orders. Over his objections, Smith performed the procedure on Baker several times during this three-month time period.

On March 10, 2009, Lt. Landsen placed Smith in the SHU. Landsen refused to provide him any explanation for the action, but Smith alleges SIA Anderson ordered the confinement in retaliation for a letter which he (Smith) had written to a friend, stating that he was going to file a grievance about being forced to perform therapy procedures on Baker and other improprieties occurring at the prison. According to Smith, an unidentified FMC-Lexington officer reviewed his letter, "sent it to SIS and the next day I [sic] was lock [sic] up." R. 2-2, p. 4. Smith alleges that his extended confinement in SHU and later transfer to FCI-Ashland, were in retaliation for his statements in his letter. *See* R. 2, p. 2 ("I was placed in the SHU for retaliation in regards to my letter, which violates my 1st Amendment rights."), and *Id.*, p. 4 ("I was placed in the SHU illegally, and in retaliation for the incidents which occurred in claims 1, 2, and 3, violating my Eighth Amendment rights.").

When Smith was placed in the SHU, he was placed under SIS

4

investigation, and remained confined in SHU until September of 2009, when he was transferred to FCI-Ashland. That time sequence appears to be substantiated from the exhaustion documents he submitted. While he was confined in SHU, he was denied access to educational programs; social services; medical services; and his telephone and visitation privileges were restricted. Although Smith administratively exhausted most of these claims, he did not mention being denied medical treatments in any of his BOP grievance appeals. *See* R. 2-2, pp. 1, 5, & 7.

On March 14, 2009, Smith submitted a detailed BP-9 "Request for Administrative remedy" to the Warden of FMC-Lexington. In that grievance, he set forth a detailed summary of the allegedly inappropriate demands which Lief had placed on him in the Physical Therapy Department with respect to Baker between December of 2008 and March of 2009.[5]

---

[5] In his BP-9 "Request for Administrative remedy" Smith stated:

> Secondly, the inappropriate orders given by staff per policy and [illegible word]. I was ordered to perform treatments on "staff" and inmates. I was told to perform heat ultrasound on a female member that doesn't work in that Dept. The fact of the matter is the staff member didn't have any pants on. She was told to go behind the curtain by Commander Lief he gave her a sheet to put over herself. Once I entered to perform the treatment I was instructed to do I notice that her pants were off a [sic] became un at ease [sic]. After completing this treatment I informed Commander Lief that I didn't feel comfortable doing these treatments while her pants were removed. He stated thats [sic] why he didn't want to do it. Instead he instructed me to do those treatments even though he

5

In this grievance, Smith also objected to his recent termination from his prison job, stating that "we" had been terminated because "we were to [sic] confrontational. When we just were told the week before that we got outstanding on our work evaluations." R. 2-2, p. 2. The grievance later revealed that "we" referred to Smith and another inmate named "Thomas." Smith alleged other incidents of what he perceived to be improper activities at FMC-Lexington.[6]

On March 23, 2009, Smith discussed his BP-9 Remedy with SIA Anderson. Although Anderson told Smith that she would refer his allegations to the Inspector General for further investigation, Smith claims that Anderson did not refer the matter. R. 2, p. 2. However, according to Smith's own exhaustion documentation, the BOP did respond to Smith's complaints by explaining that his

---

    knew that it violated prison policy. I was ordered to do
    this on several occasions despite the discomfort I had
    doing the treatments.

R. 2-2, pp. 2-3.

[6]

    Smith alleged that Lief allowed "Inmate Keller" to review his personal financial and refinancing documents; asked Keller to provide him with fi
nancial advice on his personal financial matters; took Keller's legal documents home and reviewed them; allowed Keller to view "stuff" on his computer; and on some occasions, printed material from his computer for Keller's review. *Id*., p. 3. Smith then claimed that Keller "had a problem" with him and Inmate Thomas and insinuated that they lost their prison jobs because Keller disliked them and had a good rapport with Lief.

6

allegations of staff misconduct would be referred to the proper BOP investigative authorities. *See* Warden's March 24, 2009, Response to BP-9 "Request for Administrative Remedy," R. 2-2, p. 1; BOP's Mid-Atlantic Regional Office's July 8, 2009, Response to BP-10 appeal, *Id.*, p. 5; and BOP's Central Office's October 26, 2009, Response to BP-11 appeal, *Id.*, p. 7.

The Regional Director of the BOP's Mid-Atlantic Office informed Smith that investigations of that nature are kept confidential in order to maintain the secure and orderly operation of the prison. R. 2-2, p. 5. The BOP denied Smith's other requests for relief: removal from SHU; reinstatement to a prison job with comparable pay; and return to the prison population. Harrell Watts, of the BOP's Central Office, noted that by the time Smith had filed his BP-11 Appeal, he had been removed to FCI-Ashland.

Smith's Complaint suggests that he may have been charged with a disciplinary infraction, but he did not develop that issue in any detail.[7] Smith does not allege that he lost any GTC.

### DISCUSSION
#### 1. Official Capacity *Bivens* Claims

Smith has asserted claims against all of the individually named defendants in their *official* capacities. These allegations

---

[7] Smith stated: "Even after being exonerated, I remained in the SHU. On 5-27-9 SIS Jacki Quinn told me it was verified I'd told the truth." R. 2, p. 4.

7

also fail to state a claim upon which relief can be granted because "a *Bivens* claim may not be asserted against a federal officer in his official capacity." *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991).  As a result, any claims for damages against the defendants in their official capacities are dismissed with prejudice.

 2. <u>Fifth and Eighth Amendment Individual Capacity *Bivens* Claims</u>

Smith alleges that the defendants, individually, violated his Fifth Amendment right to due process of law by confining him in SHU for six months; removing him from his well-paying prison job despite recent favorable performance evaluations; depriving him of access to various prison programs and services; and restricting his phone and visitation privileges.  Smith does not assert a valid claim under either the Fifth or the Eighth Amendment claim on any of these issues.

First, prisoners enjoy no constitutional right to vocational training or rehabilitative programs, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), or prison jobs; *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989).  Second, the denial of privileges caused by confinement in segregation does not establish an Eighth Amendment violation.  *See Bradley v. Evans*, 229 F.3d 1150, at *7 (6th Cir. 2000) (unpublished table decision).  Specifically, the limitations on Smith's telephone privilege while confined in SHU did not amount to a constitutional violation because neither the loss of telephone

8

privileges nor disciplinary segregation itself are atypical and significant hardships. *See Castleberry v. Acker*, No. 05-74271, 2006 WL 250019, at *2 (E.D. Mich., Jan. 31, 2006) (loss of telephone privileges for twenty-four months is not an atypical and significant hardship).

Third, prisoners enjoy no Fifth or Eighth Amendment right to remain free from confinement in segregated housing. The Supreme Court has established that in order for any condition of confinement to qualify as an Eighth Amendment violation, the condition must impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Moreover, a plaintiff must demonstrate the existence of a severe deprivation, such as the denial of "essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Neal v. Miller*, 778 F.Supp. 378, 382-83 (W.D. Mich. 1991) (citing *Rhodes v. Chapman*, 452 U.S. at 347-48)). Here, Smith has at best alleged only the loss of privileges in which he had no constitutionally protected liberty interest. As the Court has explained, the loss of mere privileges does not give amount to a constitutional violation.

In *Sandin*, the Supreme Court stated that housing assignments and classification decisions (such as extended placement in disciplinary segregation and transfers to higher security prisons)

9

are "ordinary incidents of prison life." *Sandin*, 515 U.S. at 483. Thus, Smith's claim that his placement in the SHU violated either his Fifth Amendment due process rights, or his Eighth Amendment right to remain free from cruel and unusual punishment, simply lacks merit.

Fourth, Smith has not alleged the loss of any GTC which would have either extended the duration of his sentence or caused an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484-86; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998). The absence of any loss of GTC supports the conclusion that Smith's Fifth and Eighth Amendment rights were not violated.

Accordingly, Smith's six- month confinement in SHU, in and of itself, and the restrictions imposed upon him during that time, were not "atypical and significant hardship[s] on the inmate in relation to the ordinary incidents of prison life." *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997). Smith's Fifth and Eighth Amendment claims on this issue will be dismissed with prejudice.

Fifth, to the extent that Smith complains about being transferred to FCI-Ashland, he again states no claim. It is well-settled that prison classifications, assignments, and transfers are functions wholly within the discretion of the BOP. *See Olim v. Wakinekona*, 461 U.S. 238, 245, (1983). Federal prisoners do not have a due process liberty interest in their

classification while incarcerated. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). Similarly, federal prisoners do not have a liberty interest in remaining free from discretionary transfers to less agreeable prisons, *Meachum*, 427 U.S. at 225, or in being housed in a particular institution or a particular part of an institution. *See Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Sixth, Smith broadly alleged in his Complaint that he was denied medical treatment while he was confined in SHU. Smith did not mention denial of medical treatment in any of the BOP administrative remedies which he attached to his Complaint. Even though exhaustion of administrative remedies need not be pled specifically in a complaint, *Jones v. Bock*, 549 U.S. 199, 211(2007), where it is apparent from the face of a complaint that an inmate has failed to exhaust the prison grievance procedure, *sua sponte* dismissal is appropriate on initial review for failure to state a claim upon which relief may be granted. *Id*. at 215; *See also Spaulding v. Oakland County Jail Medical Staff*, No. 4:07-cv-12727, 2007 WL 2336216, at *3 (E.D. Mich. Aug.15, 2007) (applying *Jones* and dismissing complaint on initial screening for failure to exhaust because it was clear from the face of the complaint that the prisoner had not exhausted his administrative remedies prior to filing suit). That claim will also be dismissed.

### 3. Sixth and Fourteenth Amendment Individual Capacity *Bivens* Claims

The Sixth Amendment of the United States Constitution guarantees a defendant the right to assistance of counsel for his defense. *See* U.S. Const. amend. VI. While Smith has invoked the Sixth Amendment as an additional basis for his claims, the Court finds no factual basis for the asserting a claim in this civil proceeding under this constitutional provision.

Additionally, Smith has erroneously listed the Fourteenth Amendment as a basis for his claims. Smith is a federal prisoner who asserts claims against federal officials. The Fourteenth Amendment only applies to the states. *See* U.S. Const. amend. XIV. Smith's claims clearly fall under the ambit of the Fifth Amendment of the United States Constitution, which applies to the federal government. *See* U.S. Const. amend. V. Accordingly, both of these claims will be dismissed with prejudice, as frivolous.

### 4. First Amendment Individual Capacity *Bivens* Claims

Smith claims that when he conveyed in a letter his intention to file a grievance exposing alleged improprieties at the prison, the defendants retaliated against him for exercising his constitutionally protected rights under the First Amendment of the United States Constitution. *See* R. 2, p. 2 ("I was placed in the SHU for retaliation in regards to my letter, which violates my 1st Amendment rights."); R. 2-2, p.2 ("I was placed in shu [sic] under SIS investigation for writing a letter to some [sic] in California

telling them I was filing a BP-9 and knew things"); and *Id.*, p.4 (claiming that an unidentified officer read his letter and sent it to SIS the next day).

To state a First Amendment claim for retaliation, a plaintiff must establish that: 1) he engaged in protected conduct; 2) he suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in the protected conduct; and 3) the adverse action was motivated at least in part by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Id*. at 395. But if the plaintiff establishes the three elements, the burden of production then shifts to the defendants to show that their actions would not have been different absent the plaintiff's protected conduct. *Id*. at 400.

Smith alleges that he was placed in SHU in retaliation for stating, in advance, his intention to file a grievance when he wrote a letter to someone in California.[8] To the extent that Smith

---

[8] A prisoner has a First Amendment right to file a grievance against prison officials on his own behalf, but only if the grievance is not frivolous. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). In two unpublished orders, the Sixth Circuit held that prisoners who threatened to file frivolous grievances were not engaged in protected conduct. *See Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456, at *2 (6th Cir. Sept.18, 2000) (unpublished table decision); and *Thaddeus-X v. Love*, 215 F.3d 1327, at *3 (6th Cir. 2000) (unpublished table decision).

alleges liability on the part of former Warden Stephen Dewalt, that effort fails. The doctrine of *respondeat superior* cannot provide the basis for liability in a *Bivens* action to impute liability onto supervisory personnel, *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1948 (2009); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978), unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Smith has not alleged that Dewalt either encouraged the alleged constitutional violations or that he directly participated in the alleged retaliatory actions.

In his Complaint and attachments, Smith did not identify the specific person who, he claims, read his letter containing his threat to file a grievance about activities in FMC-Lexington. In fact, Smith alleged no facts supporting his broad and conclusory allegation that *any* of the named defendants actually read his letter. "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citations omitted). More than bare assertions or legal conclusions are ordinarily required to satisfy federal notice pleading requirements. *Scheid v. Fanny farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

14

Smith mentioned only two defendants involved in his SHU confinement: (1) Lt. Winston Landsen and (2) SIA Anderson. Smith claimed that Landsen placed him in SHU "for a letter I wrote to my family explaining that I was about to file a grievance against Fred Lief, Pamela Baker, and Alex Brenner for forcing me by coercion and threats to do a medical procedure on Pamela Baker." R. 2, p. 2.

However, in his March 14, 2009 BP-9 "Request for Administrative Remedy," Smith did not mention Lt. Landsen but instead assigned the blame for his SHU confinement on SIA Anderson. There, Smith alleged that "I was placed in SHU under SIS investigation for writing a letter to some [sic] in California telling them I was filing a BP-9 and I knew things. SIA Anderson had me locked up before I could even file this BP-9 or even know what I was talking about." R. 2-2, p. 3.

As noted, Smith did not identify the person who allegedly read his letter and conveyed its contents to SIA Anderson. Significantly, Smith did not allege that either Landsen or Anderson actually read the letter. He merely speculates that Anderson and Landsen read his letter and then retaliated against him by ordering his confinement in SHU.[9] "While *pro se* pleadings must be liberally

---

[9] Smith stated in his BP-9 "Request for Administrative Remedy" that he lost his prison job for being too confrontational. R. 2-2, p. 2. Smith discounts the possibility that his own behavior might have been an alternative reason he was placed in SHU and/or why disciplinary charges may have been filed against him.

15

construed in the light most favorable to plaintiffs, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), mere conclusory allegations are insufficient to support a civil rights claim. The factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court rejected the standard established in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 546 . The Supreme Court recently expounded upon *Twombly* in *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, writing:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L. Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

*Iqbal*, ---U.S. --- 129 S. Ct. at 1949.

Here, Smith's contradictory allegations against both Landsen and Anderson amount, at best, to an "unadorned,

16

the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555. Smith does not allege how either Landsen or Anderson allegedly learned of his intention, or plan, to file a grievance. Simply put, Smith's conclusory allegations do not establish a causal connection between his alleged threat to file a grievance and Landsen and Anderson's alleged conduct. *See Thaddeaus-X*, 175 F.3d at 399 ("the third element-a causal connection between the protected activity and adverse action-needs to be established by the plaintiffs to complete their affirmative case."). Smith's First Amendment retaliation claim against Landsen and Anderson will therefore be dismissed for failure to state a claim upon which relief may be granted.

Smith includes the remaining eight defendants (Lief, Baker, Quinn, Johnson, Williams, Terris, Jones, and Brenner) in his retaliation claim, alleging that they are liable under *Bivens* solely because they knew that he remained in SHU for six months. In order to impose liability under *Bivens,* a plaintiff must allege that the defendants performed, or were directly involved in, the action which resulted in the deprivation of the constitutional right. *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976); *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir. 1998). *Bivens* liability is individual only and is based upon each defendant's own constitutional violations. *Trulock v. French*, 275 F.3d 391, 402 (4th Cir. 2001).

For liability to be imposed against these eight defendants under *Bivens*, Smith would have been required to allege more than that these eight defendants were merely aware of his confinement in SHU; he would have been required to allege that they either encouraged the alleged constitutional violations or that they directly participated in the alleged actions. *Rizzo v. Goode*, 423 U.S. at 375-76. Because Smith did not allege that these eight defendants were personally involved in or responsible for his confinement in SHU, Smith has no First Amendment claim against them. *See Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003); *Kesterson v. Fed. Bureau of Prisons*, 60 F. App'x 591, 592 (6th Cir. 2003).

For these reasons, Smith's First Amendment retaliation claim lacks merit. As Smith's Complaint will be dismissed with prejudice in its entirety, his Motion for Appointment of Counsel, R. 4, will be denied as moot.

### CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Smith's Motion for Appointment of Counsel, R. 4, be, and the same hereby is, **DENIED**.

(2) Smith's Complaint, R.2, asserting First, Fifth, Sixth, Eighth and Fourteenth Amendment constitutional claims against the named defendants, be, and the same hereby is, **DISMISSED WITH PREJUDICE**.

18

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This the 27th day of January, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge